**<u>EXHIBIT 1</u>**

**BLOCK**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and BLOCK COMMUNICATIONS INC. d/b/a PITTSBURGH POST-GAZETTE (the "Company"), on the other hand. Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date (the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the Company disputes; and

WHEREAS, on March 7, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50180 (the "Adversary Action"). The Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by reference.

2.    **Settlement Amount.** Within Fifteen (15) days of Court approval of this Settlement Agreement, Company shall pay to the Trustee the sum of nine thousand dollars (US $9,000.00) (the "Settlement Payment"); in accordance with following wire instructions:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010308 |
| Acct Name: | Sam Levin, Inc. |

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Sam Levin, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

2

3.    **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.    **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Proceeding is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees.

5.    **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee, solely in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Defendant Releasees in connection with the 90 Day Transfers and/or the Adversary Action.

6.    **Company's Limited Release.** Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their

3

bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfers and/or the Adversary Action, , provided, however, that the Company does not waive any rights with respect to the filing of a § 502(h) claim.

7.    **Bankruptcy Court Approval.** Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019. Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

8.    **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

9.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers, the Waived Claim and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees,

4

costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

10.     **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

11.     **Miscellaneous.**

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)     Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

5

DOCS_LA:344260.1 05233/003

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

6

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

7

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____, 2022

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Art Van Furniture, LLC, et al,
which includes Wolf Furniture, a division of Levin
Furniture

By: _____
    Alfred T. Giuliano, Trustee

Dated: __7/12__, 2022

BLOCK COMMUNICATIONS INC. d/b/a
PITTSBURGH POST- GAZETTE

By: _____
Name: KEITH WILKOWSKI
Title: VP, Legal

8

**<u>EXHIBIT 2</u>**
**CROSSMEDIA**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and CROSSMEDIA, INC. (the "Company"), on the other hand.  Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the Company disputes; and

WHEREAS, on February 28, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50188 (the "Adversary Proceeding"). The Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.      **Recitals.**  The recitals set forth above are incorporated herein by reference.

2.      **Settlement Amount.** Within ten (10) days after entry of a final order of the Bankruptcy Court approving the Settlement Agreement, which order is no longer subject to appeal pursuant to Federal Rule of Bankruptcy Procedure 8002, Company shall pay to the Trustee the sum of Thirteen Thousand Two Hundred Fifty Dollars (US $13,250.00) (the "Settlement Payment") in accordance with following wire instructions:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010712 |
| Acct Name: | Art Van Furniture, LLC |

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Art Van, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

2

3.      **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final order of the Bankruptcy Court approving the Settlement Agreement, which order is no longer subject to appeal pursuant to Federal Rule of Bankruptcy Procedure 8002 (the "Settlement Effective Date").

4.      **Dismissal of Litigation.** Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Proceeding is dismissed with prejudice.  Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees.

5.      **Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its past or present attorneys, representatives, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Company Releasees") from any and all claims, manner of actions, liens, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Company Releasees, in connection with the 90 Day Transfers and/or the Adversary Proceeding.

3

6.    **Company's Limited Release.**  Effective on the Settlement Effective Date, the Company Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, representatives, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, liens, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees including any 502(h) claim in connection with the 90 Day Transfers and/or the Adversary Proceeding.

7.    **Claim Waiver.**  Company's claim(s) and/or any proof of claim(s) against the Debtors or their estates, if any, shall not be amended, modified or otherwise affected as a result of this Settlement Agreement, and any pending objection to an existing claim in the Bankruptcy Cases shall not be granted, denied, modified, withdrawn, or otherwise affected by this settlement, except that the Company hereby waives any claim for the Settlement Payment pursuant to any 502(h) claim of the Bankruptcy Code (the "Waived Claim").

8.    **Bankruptcy Court Approval.**  Following the Parties' execution of this Settlement Agreement, the Trustee shall move for approval of this Settlement Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Settlement Agreement shall have no binding

4

effect. In the event an order approving this Settlement Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

9.      **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers, and the Settlement Payment made hereunder is not intended to be construed as an admission of any liability by either Party.

10.      **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers, the Waived Claim and this Settlement Agreement.

11.      **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

12.      **Miscellaneous.**

(a)      Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)      Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things

5

reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained

6

herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(k)     This Settlement Agreement shall inure to the benefit of and be binding upon the Parties hereto, and their respective heirs, executors, administrators, legal representatives, successors and assigns.

(l)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

*[SIGNATURE PAGE TO FOLLOW]*

7

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____ 9/21 _____, 2022

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Start Man Furniture, LLC, et
al

By: _____
        Alfred T. Giuliano, Trustee

Dated: 9/15/_____, 2022

CROSSMEDIA, INC.

By: _____
Name: RAMESH RAJAN
Title: CFO

DOCS_LA:344358.2 05233/003

**<u>EXHIBIT 3</u>**
**E-B**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and E-B DISPLAY COMPANY, INC., an Ohio corporation (the "Company"), on the other hand. Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received a payment from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfer"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the Company disputes; and

WHEREAS, on March 1, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50190 (the "Adversary Action").

WHEREAS, the Company answered the Trustee's complaint and has disputed the Trustee's entitlement to relief; and

WHEREAS, the Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.**  The recitals set forth above are incorporated herein by reference.

1.    **Settlement Amount**. According to the below instructions, Company shall pay to the Trustee the sum of Two Hundred Twenty-Five Thousand Dollars (US $225,000.00) (the "Settlement Payment") made via three consecutive and equal payments of Seventy-Five Thousand Dollars (US $75,000.00) each, with the first installment due on execution of the Settlement Agreement, the second installment due thirty (30) days from the entering of the court order approving this settlement, and the last installment due ninety (90) days from the entering of the court order approving this settlement.  The Settlement Payments will be made in accordance with following wire instructions:

2

Bank:      TriState Capital Bank
               301 Grant Street, Suite 2700
               Pittsburgh, PA 15219
ABA #:     043019003
Swift #:    TRTTUS33
Acct #:     8100010712
Acct Name:  Art Van Furniture, LLC

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Art Van, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

2.     **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final order of the Bankruptcy Court approving the Settlement Agreement, which order is no longer subject to appeal pursuant to Federal Rule of Bankruptcy Procedure 8002 (the "Settlement Effective Date").

3.     **Dismissal of Litigation**. Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Proceeding is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees.

4.     **Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Company Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

3

judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Company Releasees, in connection with the 90 Day Transfer and/or the Adversary Action.

     5.    **Company's Limited Release.**  Effective on the Settlement Effective Date, the Company Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees, however, that the Company does not waive any rights with respect to the filing of a § 502(h) claim.

     6.    **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019. Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

4

7.     **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfer.

8.     **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfer, the Waived Claim and this Settlement Agreement.

9.     **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.    **Miscellaneous.**

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)     Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented

6

to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)     The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

7

      (n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

      IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: 9/8_____, 2022

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Start Man Furniture, LLC, et
al

By: _____
      Alfred T. Giuliano, Trustee

Dated: _____, 2022

E-B DISPLAY COMPANY, INC.

By: _____
Name: Michael S. Rotolo
Title:  President

8

## **EXHIBIT 4**
### **JAIPUR**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and JAIPUR, LLC (the "Company"), on the other hand.  Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of

the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the

Company disputes; and

WHEREAS, on February 28, 2022, the Trustee filed a *COMPLAINT FOR*

*AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C.*

*§§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware,

assigned Adversary Case Number 22-50195 (the "Adversary Action"). The Parties have engaged

in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.      **Recitals.**  The recitals set forth above are incorporated herein by

reference.

2.      **Settlement Amount**. Within ten (10) days after entry of a final order of

the Bankruptcy Court approving the Settlement Agreement, Company shall pay to the Trustee

the sum of Ten Thousand Dollars (US $10,000.00) (the "Settlement Payment") in accordance

with following wire instructions:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010712 |
| Acct Name: | Art Van Furniture, LLC |

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Art Van, Inc.", as addressed to
Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite
1300, Los Angeles, CA 90067.

2

The Settlement Payment shall be made in accordance with the following installments:

| | |
|---|---|
| Upon Execution of the Settlement Agreement: | $1500.00 |
| Within 14 days after entry of the Court order Approving the Settlement: | $1500.00 |
| 44 days from entering of the Court order: | $1500.00 |
| 74 days from entering of the Court order: | $1500.00 |
| 104 days from entering of the Court order: | $1500.00 |
| 134 days from entering of the Court order: | $1500.00 |
| 164 days from entering of the Court order (the "Final Payment") | $1000.00 |

3.      **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the entire Settlement Payment, and (iii) entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.      **Dismissal of Litigation**. Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Action is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Action, including attorneys' fees.

5.      **Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Company

3

DOCS_LA:344788.2 05233/004

Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Company Releasees, in connection with the 90 Day Transfers and/or the claims and causes of action that were asserted (or could have been asserted) in the Adversary Action.

6.     **Company's Limited Release.**   Effective on the Settlement Effective Date, the Company Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees including any 502(h) claim in connection with the 90 Day Transfers and/or the Adversary Action.

7.     **Claim Waiver**.   The Company hereby waives any claim for the Settlement Payment pursuant to any claim arising under § 502(h) of the Bankruptcy Code (the "Waived Claim") or otherwise.

4

8.      **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

9.      **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

10.     **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Adversary Action, the 90 Day Transfers, the Waived Claim and this Settlement Agreement.  In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

11.     **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

12.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) to assert the release and/or satisfaction of any claims or causes of action released and/or satisfied under this Settlement Agreement.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with

6

respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights

and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

DOCS_LA:344788.2 05233/004

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s)

set forth below:

ACCEPTED AND AGREED TO BY:

Dated: September 10, 2022

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Start Man Furniture, LLC, et
al

By: _____
        Alfred T. Giuliano, Trustee

Dated: September 16 2022

JAIPUR LLC

By: ___NITIN SONI___
Name: _____
Title: ___PRESIDENT___

**<u>EXHIBIT 5</u>**
**MISCIK**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is

entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee

(the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the

"Debtors"),[1] and not in any individual capacity, on the one hand, and MISCIK PRINTING

SERVICE, INC. (the "Company"), on the other hand.  Company and the Trustee may be

referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors

filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are

being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the

United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered

an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano

was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to

the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from

the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the Company disputes; and

WHEREAS, on March 2, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50202 (the "Adversary Action"). The Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.      **Recitals.**  The recitals set forth above are incorporated herein by reference.

2.      **Settlement Amount**. Within ten (10) days after Court approval of this Settlement Agreement, Company shall pay to the Trustee the sum of $7,500.00 (the "Settlement Payment"): in accordance with following wire instructions:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010308 |
| Acct Name: | Sam Levin, Inc. |

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Sam Levin, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

3.      **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the

2

Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

    4.    **Dismissal of Litigation**. Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Proceeding is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees.

    5.    **Trustee's Limited Release.** Effective on the Settlement Effective Date, the Trustee, solely in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Defendant Releasees in connection with the 90 Day Transfers and/or the Adversary Action.

    6.    **Company's Limited Release.** Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them

DOCS_LA:344870.1 05233/003

(collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfers and/or the Adversary Action, including any 502(h) claim.

7.    **Claim Waiver.** Defendant hereby waives any claim for the Settlement Payment pursuant to any claim arising under § 502(h) of the Bankruptcy Code (the "Waived Claim") or otherwise.

8.    **Bankruptcy Court Approval.** Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019. Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

9.    **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

10.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Adversary Action, the 90 Day Transfers, the Waived Claim and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable

4

attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

11.     **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

12.     **Miscellaneous.**

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein), (ii) to seek damages or injunctive relief in connection therewith, or (iii) to assert the release and/or satisfaction of any claims or causes of action released and/or satisfied under this Settlement Agreement.

(b)     Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

5

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented

6

to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

7

        (a)    Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

        (b)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

        IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____, 2022

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Art Van Furniture, LLC, et al,
which includes Wolf Furniture, a division of Levin
Furniture

By: _____
      Alfred T. Giuliano, Trustee

Dated: 9 - 7 - 2022, 2022

MISCIK PRINTING SERVICE, INC.

By: _____
Name: Karen Miscik.
Title: President

## **EXHIBIT 6**
### **Q1**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and Q1MEDIA, INC. (the "Company"), on the other hand. Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the Company disputes; and

WHEREAS, on March 2, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50207 (the "Adversary Action"). The Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.**  The recitals set forth above are incorporated herein by reference.

2.    **Settlement Amount**. Within ten (10) days following Court approval of this Settlement Agreement, Company shall pay to the Trustee the sum of Seventeen Thousand Dollars (US $17,000.00) (the "Settlement Payment"): in accordance with following wire instructions:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010308 |
| Acct Name: | Sam Levin, Inc. |

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Sam Levin, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

3.     **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.     **Dismissal of Litigation**. Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Action is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Action, including attorneys' fees.

5.     **Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Trustee, solely in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Defendant Releasees in connection with the 90 Day Transfers and/or the Adversary Action.

6.     **Company's Limited Release.**  Effective on the Settlement Effective Date, the Company shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates,

3

their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfers and/or the Adversary Action, provided, however, that the Company does not waive any rights with respect to the filing of a § 502(h) claim or any proof of claim that Company has previously filed in the Debtor's bankruptcy proceeding.

7.      **Bankruptcy Court Approval.** Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Settlement Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019. Until and unless the Bankruptcy Court enters an order of approval, this Settlement Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

8.      **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

9.      **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers, and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the

4

prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

      10.    **Miscellaneous.**

      (a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

      (b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

      (c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

      (d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

      (e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

      (f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with

DOCS_LA:344598.2 05233/003

respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)    The Company's deadline to answer the complaint filed in the Adversary Action shall be extended until the later of the Settlement Effective Date and fourteen (14) days after the entry of an order denying approval of this Settlement Agreement.

(i)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(j)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained

6

herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(l)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(m)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(n)     The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(o)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

7

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the

date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: ___8/8___, 2022

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Art Van Furniture, LLC, et al,
which includes Wolf Furniture, a division of Levin
Furniture

By: _____
         Alfred T. Giuliano, Trustee

Dated: _AUGUST 5TH_ 2022

Q1MEDIA, INC.

By: _____
Name: MATT BENTLEY
Title: COO

8

**EXHIBIT 7**
**TWIN-STAR**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and TWIN-STAR INTERNATIONAL, INC. (the "Company"), on the other hand.  Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

(the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the Company disputes; and

WHEREAS, on March 2, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50209 (the "Adversary Action"). The Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1. **Recitals.** The recitals set forth above are incorporated herein by reference.

2. **Settlement Amount**. Within ten (10) days after entry of a final order of the Bankruptcy Court approving the Settlement Agreement, which order is no longer subject to appeal pursuant to Federal Rule of Bankruptcy Procedure 8002, Company shall pay to the Trustee the sum of $13,000.00 (the "Settlement Payment"): in accordance with following wire instructions:

| | |
|---|---|
| Bank: | TriState Capital Bank |
| | 301 Grant Street, Suite 2700 |
| | Pittsburgh, PA 15219 |
| ABA #: | 043019003 |
| Swift #: | TRTTUS33 |
| Acct #: | 8100010712 |
| Acct Name: | Art Van Furniture, LLC |

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Art Van, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

DOCS_LA:343536.2 05233/003

3.    **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final order of the Bankruptcy Court approving the Settlement Agreement, which order is no longer subject to appeal pursuant to Federal Rule of Bankruptcy Procedure 8002 (the "Settlement Effective Date").

4.    **Dismissal of Litigation**. Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Proceeding is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees.

5.    **Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Trustee, solely on behalf of the Debtors and the Debtors' estates in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its past or present attorneys, accountants, financial advisors, directors, employees, officers, and the successors and assigns of any of them (collectively, the "Company Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Company Releasees, including under Chapter 5 of the Bankruptcy Code, in connection with the 90 Day Transfers and/or the Adversary Action.

6.     **Company's Limited Release.**  Effective on the Settlement Effective Date, the Company Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Company Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfers and/or the Adversary Action, including any 502(h) claim.

7.     **Claim Waiver.**  The Company hereby waives any claim for the Settlement Payment pursuant to any 502(h) claim of the Bankruptcy Code (the "Waived Claim"), or otherwise.

8.     **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

4

9.  **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

10.  **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers, the Waived Claim and this Settlement Agreement.  In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

11.  **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

12.  **Miscellaneous.**

(a)  Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

6

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

7

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____, 2022

Dated:  June 27, 2022

Alfred T. Giuliano, solely in his capacity as Chapter 7 Trustee of Start Man Furniture, LLC, et al

TWIN-STAR INTERNATIONAL, INC.

By:_____
       Alfred T. Giuliano, Trustee

By:_____
Name: Lori Gonzalez
Title: Chief Executive Officer

8

## EXHIBIT 8
### STYLECRAFT

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between Alfred T. Giuliano, solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Start Man Furniture, LLC f/k/a Art Van Furniture, LLC, et al. (the "Debtors"),[1] and not in any individual capacity, on the one hand, and STYLECRAFT HOME COLLECTION, INC. and Stylecraft Home Collection, Inc. d/b/a Harp and Finial (the "Company"), on the other hand.  Company and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about March 8, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) under Case No. 20-10553 in the United States Bankruptcy Court for the District of Delaware; and

WHEREAS, on or about April 6, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 263], and Alfred T. Giuliano was appointed as the chapter 7 trustee [Docket No. 264]; and

WHEREAS, the Debtors and Company had various business relationships prior to the Petition Date; and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, include: Start Man Furniture, LLC (f/k/a Art Van Furniture, LLC) (9205); SVF Holding Company, Inc. (f/k/a AVF Holding Company, Inc.) (0291); SVCE, LLC (f/k/a AVCE, LLC) (2509); StartVF Holdings I, LLC (f/k/a AVF Holdings I, LLC) (2537); StartVF Holdings II, LLC (f/k/a AVF Holdings II, LLC) (7472); SVF Parent, LLC (f/k/a AVF Parent, LLC) (3451); Levin Parent, LLC (8052); Start Man Furniture of Canada, LLC (f/k/a Art Van Furniture of Canada, LLC) (9491); SV Sleep Franchising, LLC (f/k/a AV Pure Sleep Franchising, LLC) (8968); SVF Franchising, LLC (f/k/a AVF Franchising, LLC) (6325); LF Trucking, Inc. (1484); Sam Levin, Inc. (5198); and Comfort Mattress LLC (4463).

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date (the "90 Day Transfers"), which the Trustee believes he can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, and the Company disputes; and

WHEREAS, on March 3, 2022, the Trustee filed a *COMPLAINT FOR AVOIDANCE AND RECOVERY OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 & 550* against the Company in the United States Bankruptcy Court, District of Delaware, assigned Adversary Case Number 22-50219 (the "Adversary Action"). The Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.** The recitals set forth above are incorporated herein by reference.

2.    **Settlement Amount**. Within Fifteen (15) days of Court approval of this Settlement Agreement, Company shall pay to the Trustee the sum of twenty-five thousand dollars (US $25,000.00) (the "Settlement Payment"): in accordance with following wire instructions:

|            |                            |
|------------|----------------------------|
| Bank:      | TriState Capital Bank      |
|            | 301 Grant Street, Suite 2700 |
|            | Pittsburgh, PA 15219       |
| ABA #:     | 043019003                  |
| Swift #:   | TRTTUS33                   |
| Acct #:    | 8100010308                 |
| Acct Name: | Sam Levin, Inc.            |

2

If by check, make payment to "A. Giuliano, Chapter 7 Trustee, Sam Levin, Inc.", as addressed to Pachulski Stang Ziehl & Jones LLP, Attn. Jeffrey P. Nolan, 10100 Santa Monica Blvd, Suite 1300, Los Angeles, CA 90067.

3.      **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.      **Dismissal of Litigation**. Within ten (10) business days after the Settlement Effective Date, the Trustee shall cause to be filed whatever documents are necessary to ensure that the Adversary Proceeding is dismissed with prejudice. Each party will bear its own costs relating to the Adversary Proceeding, including attorneys' fees.

5.      **Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Trustee, solely in his capacity as chapter 7 trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee has, had, may have, or may claim to have against the Defendant Releasees in connection with the 90 Day Transfers and/or the Adversary Action.

6.    **Company's Limited Release.**  Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees in connection with the 90 Day Transfers and/or the Adversary Action, provided, however, that the Company does not waive any rights with respect to the filing of a § 502(h) claim.

7.    **Bankruptcy Court Approval.**  Following the Parties' execution of this Agreement, the Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event an order approving this Agreement does not become final, each of the Parties shall not be prejudiced but returned to their position status quo ante.

8.    **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

9.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

10.    **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

11.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

5

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented

6

to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

7

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____ 7/21 ____, 2022

Alfred T. Giuliano, solely in his capacity as
Chapter 7 Trustee of Art Van Furniture, LLC, et al,
which includes Wolf Furniture, a division of Levin
Furniture

By: _____
        Alfred T. Giuliano, Trustee

Dated: _____, 2022

STYLECRAFT HOME COLLECTION,
INC.

By: _____
Name: Jimmy Webster
Title: CEO

8